THE STATE, THE LONG BRANCH POLICE, &c., COMMISSION, PROSECUTOR, v. JOHN SLOANE ET AL.

The act entitled "A supplement to an act entitled 'An act for the formation of borough governments,' approved April 5th, 1878," which was approved April 22d, 1886 (*Pamph. L., p.* 255), is invalid as being in contravention of the constitutional prohibition against local and special laws regulating the internal affairs of towns, &c.

On *certiorari.*

On August 11th, 1886, A. Walling, Jr., presiding judge of the Monmouth county Common Pleas, made an order directing a special election to be held on August 25th, 1886, of the legal voters within the municipality known as the Long Branch Police, Sanitary and Improvement Commission, to vote for or against the incorporation of a proposed borough, to be known by the name of "The mayor and council of the borough of Long Branch," and comprising territory designated by a particular description.

The order was declared therein to be made under the provisions of chapter 187 of the Laws of 1886, and upon the application and notice required by that act. The order further declared that the election so called was to determine, by the the votes of the majority, upon the acceptance of the powers conferred by said act and the acts to which it was supplemental.

The order, with the application and notice, have been brought here by this writ of *certiorari*.

Argued at November Term, 1886, before Justices REED, MAGIE and PARKER.

For the prosecutor, *E. W. Arrowsmith* and *F. P. McDermott.*

For the defendants, *J. S. Applegate.*

The opinion of the court was delivered by

MAGIE, J.   Some preliminary questions must be disposed of before the validity of the order brought up by the writ can be considered.

It is contended, in the first place, that the prosecutor named in the endorsement on the writ is a fictitious person.   The insistment is that the " city of Long Branch " is not the name of any corporation known to the law, and that for this reason the *certiorari* should be dismissed.

If no prosecutor had been named in the endorsement, a motion to quash this writ would have prevailed.   *Coddington* v. *Stanton,* 2 *Halst.* 84.   But the writ was regularly allowed. The judge who gave it his *allocatur* must have been satisfied there was a real prosecutor.   The objection must therefore take this shape, viz., that the real prosecutor has endorsed on the writ a wrong name.   From the briefs of counsel we learn that this is the real objection, for it thus appears that the prosecutor is the corporation which was created by an act entitled "An act to establish the Long Branch Police, Sanitary and Improvement Commission," approved April 11th, 1865, and which exercises the powers conferred by that act and by others supplementary to it.

In the same manner we learn that this corporation assumed the name endorsed on the writ, under authority of an act entitled "An act providing for additional powers and certain changes in the government of certain localities' governed by commissioners," passed April 17th, 1884, and a supplement to that act, passed March 9th, 1886.

Defendant's contention is that these acts are void for un-constitutionality, and the change of corporate name based thereon is equally void.    The fourteenth section of the act of 1884 has been already pronounced invalid in this court.    *Ross* v. *Winsor*, 19 *Vroom* 95.

The reason which induced this court to declare that an abortive act of legislation seems equally applicable to the sup-plement of 1886, so far as it gives authority to adopt a muni-cipal title only to municipalities governed by commissioners and withholds such authority from other municipalities.    But assuming that defendants may question, in this collateral way, the right of prosecutor to use the name endorsed on the writ, and that prosecutor has no right to that name, yet the objec-tion ought not to result in a dismissal of the writ at this time. The need of a prosecutor in *certiorari* is only to provide a person against whom a judgment for defendants may be en-forced.    There is a real prosecutor.    If it asks to have the writ and proceedings amended by the endorsement of its proper corporate name, they can and ought to be so amended. *State, Coar, pros.*, v. *Jersey City*, 6 *Vroom* 405; *State* v. *Justice*, 4 *Zab.* 413; *Inhabitants* v. *Dilley*, 4 *Zab.* 209; *Upper Freehold* v. *Hillsboro*, 1 *Green* 289; *State* v. *Hanford*, 6 *Halst.* 71; *State* v. *Kirby*, 2 *South.* 835.    If it declines to apply, defendants may make application for an order requiring such an amend-ment, if they think it desirable, before the judgment in this case shall be entered.

It is next contended that the writ should not have been di-rected to Judge Walling, but to the applicants for the order. By the well-settled rule it ought to have been directed to the person or persons known to have the custody of the order. The return has been made by Judge Walling, and shows that the original order was in his custody.    In *Morris Canal* v. *State*, 2 *Green* 411, a *certiorari* was directed to the commis-sioners appointed to appraise lands taken by the Morris Canal. By the act under which they were appointed they were re-quired to file their appraisement with the clerks of the various counties through which the canal ran.    The return made showed

that they had filed the appraisements, and it was held that the writ should have been directed to the clerks. But in this case it appears that Judge Walling had the actual custody of the order. In my judgment he was the rightful custodian of the order. The act under which it purported to have been made does not declare in whose custody it is to be kept. That is left to implication. By section 5 it is provided that if a majority of votes cast shall be found to be " for incorporation," the result shall be certified to the clerk of the county, " to be filed in his office." From the time of the filing of such a certificate the inhabitants of the district affected became incorporated. From this I think it may be inferred that the judge's order, which is the only justification for such an election, should be also then filed. It should therefore remain in his custody, so that he may file it. It does not seem to be a reasonable inference that the order should be in the joint custody of the numerous applicants, many, and indeed all of whom may be non-residents.

It is further urged that the writ was sued out prematurely. It was tested on August 19th, 1886, while the election called for by the order was not to be held until August 25th.

But this objection is untenable. This order was a first step in a proceeding which might result in the dismemberment of the municipality, which is the real prosecutor. It was an adjudication by the officer who made it, of his right to call the election. When made, the municipality affected had a right to challenge the validity of his adjudication. In this respect the case falls within that class in which a *certiorari* will lie before final action or judgment. *State, Hoxsey, pros.,* v. *Paterson,* 10 *Vroom* 489.

We are therefore compelled to consider whether the order brought up by this writ can be sustained.

The reason urged against this order calls in question two acts of the legislature, under which it was made, and upon the validity of which it can alone stand. The contention is that both acts are void because within the prohibition of that part of paragraph 2 of section 7 of article 4 of the amended consti-

tution, which forbids the passing of private, local and special laws regulating the internal affairs of towns and counties.

The first of these impugned acts is entitled "An act for the formation of borough governments," approved April 5th, 1878. *Pamph. L., p.* 403. The second is a supplement to the first, and was approved April 22d, 1886. *Pamph. L., p.* 255. It is obvious, however, that the act of 1878 ought not to be brought into question unless it is necessary to the decision of the case before us. It seems to have stood unchallenged for nearly nine years. Under its provisions borough governments may have been formed. A decision against its validity might operate most disastrously upon such boroughs without their having had an opportunity to be heard. For this reason the objections to the supplement of 1886 have been first considered, and since they have been found to be unsurmountable, no opinion will be expressed on the act of 1878. It will be referred to only so far as necessary to make clear the points decided.

The act of 1878 empowers the inhabitants of any township or part of a township, embracing an area not exceeding four square miles, and containing a population not exceeding five thousand, to become a body corporate, when a majority of the electors in the proposed borough shall so decide. It provides how an election for that purpose shall be held and how its result shall be certified. When the certificate shows a decision in favor of incorporation the inhabitants are declared to become a corporation with the usual powers of succession, &c. It provides for the subsequent election of officers for the government of the borough, and prescribes their powers and duties. It grants to the corporations so created certain municipal powers, broader in extent than those possessed by townships but not so extensive as those usually possessed by cities, and even by towns, boroughs and other municipalities already in existence. The supplement of 1886 provides that a borough government may be formed thereunder, or under the act to which it is a supplement, by the inhabitants of any portion of this state now subject to the government of commissioners, or a

police or sanitary board, or any other form of municipal government other than that of an incorporated city or town. It declares that the act and the act to which it is a supplement shall take effect whenever, at an election called by a Supreme Court Justice or the presiding judge of the county Common Pleas, the legal voters within the municipality shall accept the powers conferred by said acts. It prescribes how the election shall be held and how its result shall be certified if in favor of incorporation. It provides that upon the filing of such a certificate the inhabitants of the proposed borough shall be a body corporate, with the usual powers of succession, &c.

If necessary to determine the whole effect of these two acts, when read together, I think the task would be difficult. But so much is clear—that the supplement designs to extend the privileges of the original act to a new class of objects; that it provides for incorporations from that class by modes and machinery differing from that provided by the original act, but confers on the corporations so created the specific powers conferred by the original act, which are not again enumerated in the supplement.

The contention is that the supplement is a law regulating the internal affairs of towns, within the settled meaning of the constitutional clause in question.

This contention is first met by a claim that this legislation rather creates new political divisions of the state than regulates the internal affairs of such divisions, and the case of *Pell* v. *Newark*, 11 *Vroom* 71, is cited as authority for the proposition that the legislature is not forbidden, by the constitutional clause invoked in this case, to create new political divisions of the state. But the learned judge who expressed that opinion made the very obvious distinction between the creation or alteration of a political division and the establishment and regulation of a local government therein. He said : " The right is still preserved to the legislature to create cities, towns and counties, and to change their boundaries by special laws, so as to make them appropriate political districts for the application of general laws establishing uniform rules for their

regulation." The act under consideration in that case altered the boundaries of a ward within a city, and also contained provisions affecting the time of elections and the term of office of officers in that city. In this court it was held that the alteration of the boundary of a ward was a regulation of the internal affairs of a city forbidden to be done by special laws. In the Court of Errors the learned Chief Justice declined to express any opinion on that point. Leaving it, therefore, undetermined whether a ward boundary could be changed by the special law, he yet held that law to be unconstitutional because its other provisions were regulations of the internal affairs of the city. *Pell* v. *Newark*, 11 *Vroom* 550.

It is unnecessary to express, in this case, any opinion as to the legislative power to create or alter political divisions by special laws. Assuming the power to exist, it is confined, in my judgment, to the mere creation of a new division or the mere alteration of an existing division. If the act of creation or alteration be single, and the new division and the severed parts find the rules for their internal affairs in some general law, then such legislation may not be objectionable. But if the act of creation or alteration includes provisions looking to the regulation and government of the newly-created or altered districts or of the district from which they have been taken, then the legislation regulates the internal affairs of those districts, and cannot be supported; unless it is general. In this view, which I deem to be in entire harmony with the cases, the supplement of 1886 is a regulation of the internal affairs of towns, &c.

It remains to consider whether the supplement is a general law, within the meaning of the constitutional clause in question.

Since the adoption of this clause, its meaning in this respect has been settled by a great unanimity of opinion in numerous cases. I will not cite the cases or attempt to formulate another definition. For the purposes of this case it is sufficient to say that a determination whether or not a given law is general will proceed from a consideration both of the purpose of the act and the objects on which it is intended to operate. If

these objects are distinguished from others by characteristics evincing a peculiar relation to the legislative purpose, and showing the legislation to be reasonably appropriate to the former and inappropriate to the latter, the objects will be considered, as respects such legislation, to be a class by themselves, and legislation affecting such a class to be general. But if· the characteristics used to distinguish the objects to which the legislation applies from others are not germane to the legislative purpose, or do not indicate some reasonable appropriateness in its application, or if objects with similar characteristics and like relation to the legislative purpose have been excluded from the operation of the law, then the classification would be incomplete and faulty, and the legislation not general, but local or special.

Let us examine this supplement in this manner.    The plain legislative purpose disclosed by it is to provide a mode for the creation, out of certain existing municipalities, of new municipal corporations, with corporate powers greater than those possessed by townships and less than those usually possessed by cities, or even towns, boroughs and other existing municipalities, and to provide how such corporations shall be continued in existence and governed.

In passing, it may be said that the mode for forming boroughs prescribed by the supplement materially differs from that prescribed by the original act.    By the latter the proceeding is initiated by a petition of the owners of one-tenth in value of the taxable real estate in the proposed borough ; by the former the owners of at least one-half in value of the taxable real estate in the proposed borough must petition.    By the original act the election to determine the acceptance of corporate powers is to be held by the voters of the proposed borough ; by the supplement it is to be held by the voters of the municipality.

The objects on which the supplement operates are the inhabitants of any portion of the state, subject to any form of municipal government other than incorporated towns and cities.    Such inhabitants, if they can obtain the petition of the

owners of one-half in value of the taxable real estate, may require an election to be held, and if a majority of the voters in the municipality from which they come vote for incorporation, they become incorporated, with the powers conferred by the original act.

There is much in this supplement to indicate that it was intended to apply only to the whole inhabitants of any municipality, and not to a part of them.    If that interpretation could be accepted, the order before us cannot be sustained, for it relates only to a part of an existing municipality.    But I am driven to the conclusion that the act applies to any part of the inhabitants of any municipality included in its provisions.    It expressly provides in section 18 how the property and debts of a former borough, out of which a new borough may be formed, shall be divided between the old and the new corporation.    The inference is necessary that it was designed to permit the creation of a new borough out of a part of a previously existing municipality.

It is apparent that this supplement classifies the objects on which it operates by the single characteristic of residence.    To any inhabitants subject to any form of municipal government other than incorporated towns and cities, it offers an opportunity to sever themselves from the village, borough, commission or other municipality of which they are parts, and to create a new municipality.    The inhabitants of towns and cities on one hand, and the inhabitants of townships on the other hand, are excluded from its operation.    The inhabitants of the included municipality may be few or many—they may occupy the whole or a part thereof; if only inhabitants they may put in operation the provisions of this legislation.    It is therefore within the bounds of possibility that a flourishing borough may subdivide itself into as many separate boroughs as it has blocks, with a mayor and common council in each.

Nor does this supplement show a design to enlarge corporate powers.    The original act permitted the formation of borough governments out of townships.    This was a change from a low to a higher range of municipal power.    Much

might be said in favor of legislation which offers to any class of municipalities the power to acquire a higher grade. But the supplement affects municipal corporations having powers far more extensive than those which it professes to confer. The result is that it affords opportunity to the inhabitants of such corporations of higher grade to escape from the duties and burdens imposed thereunder, and to accept the lower range of powers conferred by this legislation, with a corresponding reduction of responsibility.

By this review of the supplement its defects are, I conceive, disclosed. In the first place it designs to afford an opportunity for local self government in the minutest subdivisions. It offers that opportunity only to the inhabitants of certain municipalities. It excludes from the opportunity the inhabitants of cities and towns. But I am not able to discover any characteristic of the inhabitants of cities and towns distinguishing them, with respect to such legislation, from the inhabitants of other municipalities. To my mind they all bear precisely the same relation to the purposes of this legislation. In the exclusion of the inhabitants of towns and cities I think the classification of the supplement is faulty.

In the next place the supplement offers to the class on which it operates the opportunity to acquire specific municipal powers. The original act furnished a like opportunity to another class, viz., the inhabitants of townships. Yet the legislation is so diverse that the opportunity is offered to one class on conditions which substantially differ from those on which the like opportunity is offered to the other class. Both classes manifestly bear the same relation to the legislative purpose, and the legislation is quite as appropriate to one class as to the other. But by the diversity of the conditions imposed, a manifest distinction is made between the two classes, which, in my judgment, renders the classification incomplete and therefore faulty.

Other objections have been suggested which are of importance and no little difficulty. I refer particularly to an objection that this legislation, in itself and in connection with

other legislation, affords to the inhabitants of almost every part of the state an opportunity to adopt one of several variant forms of municipal government. The contention is that the power of choice is not limited to a voluntary abandonment of a special charter by the adoption of one general system, but extends to a choice between several so-called general systems. This, it is insisted, violates the spirit and intent of the constitutional clause invoked in this case. But the result before reached renders unnecessary any consideration of these objections.

The order brought up by this *certiorari* must be set aside.