IN THE MATTER OF THE INCORPORATION OF THE VILLAGE
OF RIDGEFIELD PARK.

1. The power of deciding questions of public policy which relate to the organization and extent of municipal corporations is one properly belonging, under our constitution, to the legislative department of the government, and, therefore, it cannot be exercised by any person or persons belonging to or constituting either the executive or the judicial department.

2. A justice of the Supreme Court cannot decide within what territory the resident voters should be permitted to assume municipal existence and authority.

On motion for *mandamus.*

Argued at November Term, 1891, before Justices DIXON, REED and GARRISON.

For the petitioners, *William M. Johnson.*

The opinion of the court was delivered by

DIXON, J.    Under an act for the formation and government of villages, approved February 23d, 1891 (*Pamph. L., p.* 33), a petition was presented to the justice of the Supreme Court holding the Circuit Court of the county of Bergen, praying that he take the prescribed steps for the formation of the village of Ridgefield Park, in that county.    Doubting the validity of an essential provision of the act, the justice declined to do so, and application is now made to this court for a *mandamus* directing him to proceed.

The statute requires the petition to be accompanied by a description of the proposed boundaries of the village, and makes it the duty of the judge of the Circuit Court to give public notice of the boundaries and of a time and place when and where he will hear and consider what may be said as to them by any person interested.    Upon this hearing he is to determine whether the proposed boundaries are such as will be most advantageous and consistent with the public interests, in

view of the character of the locality and community proposed to be incorporated, and will not unduly or unreasonably include or exclude any territory that ought not to be included or excluded; and he is to confirm, amend or alter the boundaries as shall seem to him most consistent with public and private interests.  To the legal voters within the territory thus defined by the judge is then to be submitted the question whether the proposed village shall be incorporated.  If they approve, a municipality is created, with large powers of local government.

The power thus to be exercised by the judge is that of determining within what territory the voters may be permitted to assume municipal existence, and such local authority as the act prescribes; in effect it devolves upon him the duty of deciding to whom such authority may properly be entrusted. This is the questionable feature of the statute.

By the constitution of this state, article III., the powers of the government are divided into three distinct departments, the legislative, executive and judicial, and no person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others, except as in the constitution expressly provided.   The constitution also (article VI.) establishes the Supreme Court and a Circuit Court in every county of the state as members of the judicial department of the government.

The question now arising is, therefore, whether the power which this act attempts to confer upon the Circuit judge, who is also a justice of the Supreme Court, is one properly belonging to the executive or legislative department; for if it be, it cannot be exercised by such judge, who is a person belonging, by force of the constitution itself, to the judicial department.

It seems clear that in this state the power of incorporating municipalities properly belongs to the legislative department.

In England the power could be exercised by the crown alone, and by parliament; but as the crown and the parliament each possessed powers belonging to all the departments into

which our state government is divided, neither of these facts denotes the department to which the function belongs.

Nor can much assistance in the effort to classify this power be derived from any attempt to formulate definitions of executive, legislative and judicial authority, for it must be conceded that, with reference at least to public agencies, the lines of demarcation are sometimes shadowy.

But in the framing of American constitutions, that which chiefly suggested and controlled the selection of their language was the practice of the governments to which the framers had been accustomed, and consequently this practice furnishes one of the safest guides in the interpretation of their words.

Prior to the adoption of our state constitution in 1844, all of our municipal corporations, except a few of the most ancient towns, *e. g.*, Perth Amboy, had been created by legislative enactment, and the authority of the legislature over them had been deemed complete. The same practice and opinion prevailed throughout the United States. Says Judge Dillon (1 *Mun. Corp. (3d. ed.)*, § 9) : " In general all of our American cities, towns and counties    *    *    *    are created by the legislature." *Id.*, § 21 : " Municipal corporations must with us be created by statute." *Id.*, § 37 : " The proposition which lies at the foundation of the law of corporations in this country is, that here all corporations, public and private, exist and can exist only by virtue of express legislative enactment."

It is also, I think, true that in New Jersey the boundaries of every municipality incorporated by the legislature, save one, have been defined by statute. The exception is the town of Paterson, the boundaries of which were, under the act of November 22d, 1791 (*Pat. .L., p.* 104), determined by the location of the society for establishing useful manufactures, when sanctioned by the taxable inhabitants of the district. This practice likewise corresponds with common usage throughout the United States, except where, by constitutional restrictions, which are all modern, the legislature is required to provide for the organization of municipalities by general laws. 1 *Dill. Mun. Corp. (3d ed.)*, § 183.

These facts lead to the conclusion that, within the design of our constitution, the power of creating municipal corporations, including the definition of their territorial boundaries, is one properly belonging to the legislative department of the government.

It is not to be inferred from this that the legislature may not delegate portions of this authority, for there are many instances in which the creation, consolidation and division of municipalities have been made subject to the votes of the resident electors. But such right of delegation does not militate against the idea that the power is constitutionally legislative. Being so, it cannot be exercised by a justice of the Supreme Court. *Paul* v. *Gloucester Co.*, 21 *Vroom* 585.

This view is corroborated by the general trend of judicial sentiment in this country.

In *Powers* v. *County Commissioners*, 8 *Ohio St.* 285, it was adjudged that county commissioners, in deciding whether certain territory should be annexed to a municipality, were determining a question of public policy, and not exercising a judicial power in the sense in which the constitution vests in courts exclusive judicial powers. So, in *Shumway* v. *Bennett*, 29 *Mich.* 451, the Supreme Court declared that the power of fixing the boundaries of municipal corporations is not judicial power, and many cases are cited to illustrate the difference between the judicial power which pertains solely to courts and the power of judging which must be exercised by all functionaries.

In *People* v. *Nevada*, 6 *Cal.* 143, it was held that county courts could not be authorized to incorporate town governments, as that was deemed, under a constitution like ours, a legislative function ; and in Tennessee (*State* v. *Armstrong*, 3 *Sneed* 634) it was decided, under a similar provision, that the courts could not be authorized to create corporations or to determine whether they ought to be created. In *People* v. *Carpenter*, 24 *N. Y.* 86, the Court of Appeals said : " Previous to the constitution of 1846, the erection and division of the towns in this state and the alteration of the boundaries

thereof rested solely with the legislature, and was governed only by its discretion."

The constitution of Illinois distributes the powers of government as does ours, and there a statute was passed directing the Circuit Courts to determine whether territory ought to be annexed to or severed from any existing city, town or village. A Circuit Court having, under this act, cut off certain territory from a city, the Supreme Court reversed its proceedings, saying: "Whether cities, towns or villages shall be incorporated and, if incorporated, whether they shall be enlarged or contracted in their boundaries, presents no question of law or fact for judicial determination. It is purely a question of policy, to be determined by the legislative department." *City of Galesburg* v. *Hawkinson*, 75 *Ill.* 152.

Likewise in *People* v. *Riverside*, 70 *Cal.* 461, it was said that the propriety of establishing a municipality and of including within its boundaries a particular territory is in general a political question for the legislative department of the government.

The only case which I have found where the question turned upon the principle now involved and the decision was opposed to the foregoing citations is, *City of Burlington* v. *Leebrick*, 43 *Iowa* 252, in which the power of a Circuit Court to determine whether justice and equity required that certain territory should be annexed to a city was sustained. No reasons are assigned, the court being content to say : "We have no doubt that the questions are so far of a judicial character that they may properly be vested in the judicial department of the state." This scarcely countervails the weight of contrary decisions, reached after doubt had given rise to discussion and deliberation.

The better conclusion is that the power of deciding questions of public policy which relate to the organization and extent of municipalities is one properly belonging to the legislative department, and, therefore, not exercisable by either the executive or the judicial department.

The *mandamus* asked for should not issue.