THE STATE, EX REL. HENRY BROKING ET AL., v. JAMES M. VAN VALEN, LAW JUDGE, &c., RESPONDENT.

1. The village of Carlstadt, in the county of Bergen, in this state, is an incorporated village within the provisions of the sixty-sixth section of the act entitled "An act for the formation and government of villages," approved February 23d, 1891 (*Pamph. L.*, p. 33), as amended by the ninth section of the amendatory act of 1892. *Id.*, *p.* 416. *Vide Id.* 1860, *p.* 234; *Id.* 1872, *p.* 416; *Id.* 1873, *pp.* 734, 770; *Id.* 1882, *p.* 158; *Id.* 1890, *pp.* 29, 36, 241, 262, 532.
2. If powers and privileges are conferred upon the inhabitants of a certain district or territorial area, and if they cannot be enjoyed or exercised and the purposes intended cannot be attained without acting in a corporate capacity, an incorporation to this extent is created by implication, and the intent of the legislature·can be shown constructively as well as expressly.
3. The village of Carlstadt cannot adopt the provisions of and be incorporated under the act of 1891, as amended by the act of 1892, unless the question of the adoption of the act be first submitted to the legal voters of the said village, by the trustees or other governing board of said village, at an election held for that purpose, and approved by a majority of the votes cast at such election, and the result submitted to the law judge of the Court of Common Pleas for his action, in accordance with the ninth section of the amendatory act of 1892.

---

On rule to show cause why *mandamus* should not issue.

Argued at June Term, 1893, before Justices DEPUE, LIPPINCOTT and ABBETT.

For the relators, *Luther Shafer*.

For the respondent, *Peter W. Stagg*.

The opinion of the court was delivered by

LIPPINCOTT, J.   On the 20th day of February, 1893, a petition was presented to Hon. James M. Van Valen, the law judge of the Court of Common Pleas of the county of Bergen, under an act entitled "An act for the formation and government of villages," approved February 23d, 1891 (*Pamph. L., p. 33*), and the act amendatory thereto, approved April 8th, 1892 (*Id., p. 416*), to call an election to vote for or against the incorporation of the territory therein described as a village, to be known as the village of Carlstadt.   All of the territorial area was within the township of Lodi.   The petition was signed by Henry Broking and others, residents of the township of Lodi.   One part of the territory sought to be incorporated, now known as Carlstadt, was and is governed by a board of trustees; another portion was under the ordinary township government, and still another portion is known as the village of New Carlstadt and is governed substantially the same as the first portion, by a board of trustees.

No objection was raised before the law judge, nor is there any objection here to the form or sufficiency of the petition and the proceedings.

The only question raised is whether the act of 1891 and the amendments of 1892 permit the incorporation of territory situated in parts, as this territory is, and governed as these parts are.   The law judge held that the villages of Carlstadt and New Carlstadt were in the enjoyment of corporate powers, and that, therefore, the populations contained therein were not the persons denominated in section 1 of the act of 1891, and as to them the procedure provided by section 66 of the act must be followed, and as that had not been done he refused to order an election.   This is now an application on rule to show cause why a *mandamus* to compel him to order such election should not issue out of this court.

The first section of the act of 1891 provides "that the inhabitants of any township or part of one or more townships in this state may become incorporated as a village under this act by complying therewith," &c.   The act then proceeds to

direct the manner of incorporation and organization, the manner of government, and provides for the corporate powers to be conferred upon such villages.

This act of 1891 was under review in this court in *In re Ridgefield Park*, 25 *Vroom* 288. In that case the act of 1891 was held in an essential provision to be invalid. The constitutionality of the provisions of the statute as contained in the fifth section of the act was questioned, and it was determined that the powers attempted to be conferred by that section upon the Circuit judge, to determine whether the proposed boundaries of the village were such as would be most advantageous and consistent with the public interests, and to confirm, amend or alter the proposed boundaries as should seem to him most consistent with public or private interests, were powers properly belonging to the executive or legislative department, and not to be exercised by the Circuit judge, who was a person belonging, by force of the constitution, to the judicial department, and that, therefore, this provision of the act was unconstitutional.

By the amendatory act of 1892, to which reference has been made, section 5 of the act of 1891 was repealed and the attempt made to eliminate the unconstitutional provisions of the act of 1891, and in the decision of the case here, now before the court, the act of 1891, as amended by the act of 1892, has been treated as furnishing a constitutional scheme for the incorporation of villages. The sixty-seventh section of the act of 1891, which provided for a change of the boundaries of any village incorporated under the act, is also repealed by the amendatory act of 1892, and no question has been made as to the validity of the act of 1891 as amended for the purpose of incorporating villages under it.

The sixty-sixth section of the act of 1891, as amended by the act of 1892, provides "that it shall be lawful for any village heretofore incorporated by virtue of any special or general law to adopt the provisions of this act and thereafter to be governed by the same in lieu of the act under which such village was originally incorporated; *provided,* that the

question of adopting this act shall be submitted to the legal voters of said village by the trustees or other governing board of said village at a general or special election held for the purpose, and be approved by a majority of the votes cast at such election, and the result of such election shall be thereupon submitted to the law judge of the Court of Common Pleas of the county wherein said village is situated, who shall examine the proceedings and the result of said election, and shall have the same powers and duties in respect thereto as are herein provided in respect to the result of the election authorized in the previous sections of this act, and shall file his determination thereof as herein provided."

It has been conceded in the argument that if either of the villages of Carlstadt or New Carlstadt have been heretofore incorporated by any general or special law of this state, then they, by virtue of this proceeding, cannot be included within the proposed incorporation, if upon them, or either of them, corporate powers for municipal purposes have been conferred, and *mandamus* will not lie to compel the law judge to call an election under the statutes to which reference has been made.

The argument has been presented that these villages lie within the township of Lodi, and in order that this application be denied, it would be necessary to find that the petitioners were not inhabitants of the township of Lodi at the time they presented their petition; that whether the two villages are incorporated or not, yet their inhabitants are nevertheless inhabitants of the township of Lodi, and that, by reason of this state of affairs, there is no prohibition in the act against the incorporation proposed.   To yield to this argument would be to give no effect whatever—no meaning whatever—to the amended provisions of section 66 of the act to which reference is had.   The villages which already enjoy corporate powers, in order to surrender them, and either be included under the other provisions of the act or enjoy its privileges, can only do so in the manner provided by that section.   If they enjoy a separate corporate existence they cannot be compelled to yield it up unless by their own wish,

expressed in accordance with the provisions contained in that section of the statute.

There can be no question here, as a matter of fact, that the area includes what is known as the village of Carlstadt and what is known as the village of New Carlstadt; the first village governed with limited powers by a board of trustees and a board of fire commissioners, the second village governed by a board of trustees.

In 1860 (*Pamph. L., p.* 234), an act was passed by the legislature entitled "An act to authorize the inhabitants of the village of Carlstadt, in the county of Bergen, to improve the sidewalks of the streets of said village." Previous to the passage of this act a large tract of land, including the entire village of Carlstadt, had been purchased by a corporation organized and known by the name of the German Democratic Land Association at Carlstadt. The tract was mapped out and a map filed in the Bergen county clerk's office. This tract of land in territorial area now constitutes the village of Carlstadt.

This map is referred to in the act of 1860, and by that act the landowners are given the power to improve the sidewalks of the streets on that map by grading and paving the same; they are empowered to elect a landowner, a street superintendent and three judicious persons as commissioners of assessment, and, in accordance with the provisions of the act, it became the duty of the street superintendent and the street commissioners to grade and pave the sidewalks of the village, to make an estimate of the cost, to make an assessment of such cost and apportion it among the landowners, to take proceedings to collect the same by process directed to a constable through the intervention of a justice of the peace, providing, also, for the exercise of other powers and for penalties in certain cases and the recovery of the same by suit or action.

This statute remained without amendment until the year 1873, when a supplement was passed (*Pamph. L., p.* 770) which conferred upon the landowners of the village the power to elect " nine suitable persons, being landowners as aforesaid,

who shall constitute and be styled 'The Carlstadt Board of Trustees,'" and provides for their terms of office, also for the election of one superintendent of streets and two street commissioners, and providing for the appointment of a clerk and collector by the board of trustees. The act creates the board of trustees to govern the village, with powers to grade, work and repair the streets and roads laid out, to levy assessments for the same, &c., to borrow money and to issue bonds, the right of suffrage for village purposes remaining in the land-owners.

By general law of 1890 (*Pamph. L., p.* 241) the power of voting was extended to every citizen who was entitled to vote at any general election for members of the legislature.

In 1872 (*Pamph. L., p.* 416), the Carlstadt fire department was organized without, however, giving any limit of territory or boundaries; the incorporators were made a body corporate under the name of the "Carlstadt Fire Department of Bergen County," with entire corporate capacity by that name.

In 1873 (*Pamph. L., p.* 734), the male inhabitants within certain boundaries, including the village of Carlstadt, were constituted a body corporate under the name and style of " The Carlstadt Fire Department of Bergen County." Certain appropriate powers were conferred by this act upon this incorporation.

These acts of the legislature clearly recognize a territorial area known as Carlstadt, governed otherwise than by township government.

In 1890 (*Pamph. L., p.* 532), the control of the fire department was changed to the legal voters within the territorial limit of this corporation, which included the village of Carlstadt; so that, after the passage of the acts of 1890 the people of the village of Carlstadt were governed in two ways—first, they had a board of trustees, elected by the legal voters of said village, the limits of which were clearly defined, which trustees had power to curb, pave, repair and work the streets of the village, to levy assessments, borrow money and issue bonds for loans for such purposes; they also were governed

in part by a board of fire commissioners, who were elected by the legal voters and had complete control of the fire department of said village. Under the act of 1890 (*Pamph. L., p. 169*), entitled "An act relating to the disposition of license fees paid for any and all licenses to sell spirituous, vinous, malt and brewed liquors," approved April 1st, 1890, the village of Carlstadt receives its share of the license moneys, which are expended by its board of trustees for the benefit of the village.

It seems to be clear, from the above enactments by the legislature, that the village of Carlstadt is in the enjoyment of corporate powers and is an incorporated village within the provisions of the sixty-sixth section of the act of 1891, as amended by the act of 1892.

The village of New Carlstadt was organized by virtue of an act entitled "An act to authorize the landowners of the village of New Carlstadt, in the county of Bergen, to make improvements." *Pamph. L.* 1873, *p.* 738. Its provisions seem to confer upon the trustees selected under the act similar powers to those conferred upon the trustees of the village of Carlstadt. I have not closely examined the acts relating to the village of New Carlstadt, as the conclusion reached in relation to the village of Carlstadt renders it unnecessary. If either one of these is an incorporated village, this proceeding for the incorporation of the proposed village fails.

Reference is also made to an act entitled "An act concerning elections in villages," approved March 22d, 1882 (*Pamph. L., p.* 158); also to an act entitled "An act to increase the powers of trustees or other governing authorities of villages," approved March 4th, 1890 (*Pamph. L., p.* 29); also to an act entitled "An act to authorize the governing authorities of any village to enforce their ordinances respecting the laying or repairing of sidewalks and to collect assessments for the costs and expenses thereof," approved March 5th, 1890 (*Pamph. L., p.* 37); also to an amendment to the "Act concerning elections in villages," approved April 15th, 1890. *Pamph. L., p.* 262. I think it is readily perceivable that the powers granted

by these acts are conferred upon the already existing villages of Carlstadt and New Carlstadt, so far as they are applicable to such villages.

The act of 1891 treats of two classes of villages which may be incorporated under the act and partake of its advantages—first, the inhabitants of any township or the inhabitants of a part of one or more townships that have no other form of government in addition to the township government; and, secondly, the inhabitants of a locality that have, in addition to the township form of government, for certain purposes, a local statutory municipal government of limited powers and within a limited territory, under the name of a village, for other purposes. Both classes can be organized into villages under the act of 1891, as amended by the act of 1892, and adopt its provisions, the former class by petition, as in this case attempted, and the other class by the method provided in the amended section 66, by the trustees or governing power of the village submitting the question of incorporation under the act to a vote of the legal voters of the village. In the one case the law judge acts upon the petition and in the other he acts upon the returns after the election is held; and another distinction between the two classes is that in one case the petition is for a proposed boundary, while in the other class the territorial area is already fixed by the act or acts of the legislature under which the village was incorporated. It will be seen that section 1 and section 66 as amended respectively provide for the incorporation of the two classes of villages, and in no other manner can they become incorporated under this act. The statute must be followed, and if the statute be insufficient to accomplish the purpose intended, the courts are unable to supply what is needed.

Section 67 of the act of 1891, if not within the ruling in In re Ridgefield Park, as invalid, gave to the petitioners all the rights which they now desire. Under it the village of Carlstadt could have become incorporated by the method provided in section 66, and then it could have, by the exercise

of the power contained in section 67, acquired additional territory, but this additional territory would not include any other village which had not also complied with the same provisions of the statute of 1891. The subject in this view presents some difficulties unnecessary to consider, because section 67, as already said, was repealed by the amendatory act of 1892, and therefore there is no method of including the village of Carlstadt within the boundaries of the proposed village unless in accordance with the provisions of section 66 of the act.

The contention of the relator here is that neither of these two villages is incorporated, but certainly the statutes relating to them create a board of trustees as a governing body and confer corporate powers upon them. It is true the powers are limited, but they are the corporate powers usually conferred upon municipalities of this grade. It is not necessary that all kinds of municipal powers should be conferred; neither is it necessary that the corporate powers bestowed be conferred by express legislative grant, in order to create a body politic and corporate. Such express words are, in many instances, wanting, but if, from the whole of the statutes, incorporation is inferred, it will be sufficient; and it does seem conclusive, under the ordinary interpretation of the language of the statutes, that corporate powers were conferred. The power to issue bonds in the name of the village is a corporate power, and if they are not possessed of such corporate power, the words of the statute giving the power to issue bonds are utterly meaningless. The village of Carlstadt was incorporated within the meaning of section 66 of the act of 1891, in that there was an intention by these laws to regulate and administer the internal affairs to some extent of the inhabitants of that defined locality in matters peculiar to the village and not common to the people of the state at large. There was here an incorporated instrumentality to exercise powers, perform duties and execute functions which were strictly municipal in their nature—powers, duties and func-

tions to be exercised by local officers within well-defined territorial limits.

Dillon, in his work on *Municipal Corporations* (vol. 1, section 42), lays down a rule which it would appear is clearly applicable in the present case. He says: "Although corporations in this country are created by statute, still the rule is here settled that not only private corporations aggregate, but municipal or public corporations may be established without any particular form of words or technical mode of expression, although such words are commonly employed. If powers and privileges are conferred upon a body of men or upon the residents or inhabitants of a town or district, and if these cannot be exercised and enjoyed, and if the purposes intended cannot be carried into effect without acting in a corporate capacity, a corporation is, to this extent, created by implication. The question is upon the intent of the legislature, and this can be shown constructively as well as expressly."

*Inhabitants, &c.,* v. *Wood,* 13 *Mass.* 193, was a case where the question was whether the plaintiffs were a corporate body with power to sue. They were not incorporated expressly, but, by statute, the inhabitants of the several school districts were empowered, at any meeting properly called, to raise money to erect, repair or purchase a school-house, to determine its site, &c., the majority binding the minority. The opinion of the court was that the plaintiffs possessed sufficient corporate powers to maintain an action on a contract to build a school-house and to make to them a lease of land.

The village of Carlstadt, upon a contract to pave sidewalks, could maintain an action, and so, too, could an action be maintained against them to compel them to levy the assessments in accordance with the statute to pay the expense of such paving.

The villages here were possessed of limited corporate powers of a very simple grade, but the powers conferred were no less corporate.

Acts of the legislature have been frequently passed incor-

porating towns and villages within townships, for special and limited purposes. In such cases the inhabitants of the district incorporated remained inhabitants of the township within which the town is situate, for all purposes except those within the objects of the municipal government, and the jurisdiction of the township officers continues over them only so far as not inconsistent with the provisions of the incorporating act. *State, Pancoast, pros.*, v. *Troth et al.*, 5 *Vroom* 377.

The village incorporation is of the lowest grade, conferring the most limited powers. It ranks below the borough or the town, but within its range its incorporated powers are as amply protected as those of a city.

The conclusion in this case is reached that the villages of Carlstadt and New Carlstadt are incorporated villages within the interpretation of the sixty-sixth section of the act of 1891 as amended, and they cannot take advantage of the other provisions of that act or be compelled to accept them except in accordance with the provisions of that section.

Therefore the *mandamus* is refused, with costs.