IN THE MATTER OF THE APPLICATION OF THE BUCK-
EYE PIPE LINE COMPANY, A CORPORATION OF THE
STATE OF OHIO, DULY LICÉNSED TO DO BUSINESS
IN THE STATE OF NEW JERSEY, TO FIX THE COM-
PENSATION TO BE PAID FOR THE LANDS OF THOMAS
LLOYD FAUBEL, SITUATED IN RARITAN TOWNSHIP,
HUNTERDON COUNTY, NEW JERSEY, TO BE TAKEN
FOR PUBLIC USE.

Special Statutory Court

Decided May 22, 1952.

See also 20 *N. J. Super.* 116, 89 *A.* 2d 286.

124

*Messrs. Herr & Fisher (Mr. Ryman Herr, appearing), attorneys for petitioner.*

*Mr. Henry F. Schenk (Mr. Harry Krieger, appearing), attorney for respondent,* Thomas Lloyd Faubel.

*Mr. Morgan R. Seiffert, attorney for N. J. Turnpike Authority, amicus curiae.*

*Mr. Theodore D. Parsons, Attorney-General (Mr. Sackett M. Dickinson, Deputy Attorney-General, appearing), for the N. J.* Highway Department, *amicus curiae.*

Before FREDERICK R. COLIE, Judge of the Superior Court of New Jersey, sitting as a Special Statutory Court.

COLIE, J. S. C. This is a motion to dismiss the petition and vacate an order appointing commissioners in a condemnation proceeding. An opinion was prepared and filed dismissing the petition and vacating the order appointing commissioners. Thereafter, counsel for the New Jersey Turnpike Authority called to the court's attention the fact that its interpretation of *R. S.* 20:1–3 would jeopardize many titles which the Turnpike Authority and the Highway Department had theretofore acquired. At the court's suggestion, the Turnpike Authority and the Highway Department appeared, the matter was reargued and briefs were filed.

The Buckeye Pipe Line Company presented a petition pursuant to *Title 20, Revised Statutes of New Jersey,* seeking an order appointing three commissioners to assess damages for an easement or right of way, to fix a date for hearing of the petition and a date on or before which the commissioners' report should be filed, and directing notice to the owner and persons interested in the lands through which the easement or right of way will pass.

The petition recites that Buckeye, an Ohio corporation authorized to do business in this State, is empowered to own,

maintain and operate pipe lines "for the transportation as a common carrier of petroleum and petroleum products for the Public"; that it has power to take lands for public use pursuant to *R. S.* 48:10–1, providing: "Pipe line companies, associations and corporations may acquire by condemnation land and other property necessary for public use for right of way in the manner prescribed by chapter 1 of the title *Eminent Domain* (§ 20:1–1 *et seq.*)"; that it adopted a resolution, annexed to the petition, "determining that the lands and premises hereinafter described shall be acquired for use as a right of way for the construction, maintenance and operation of a pipe line 16 inches in diameter." The lands are described as situate in the Township of Raritan, Hunterdon County, New Jersey, and identified by metes and bounds and said to embrace 72.51 acres more or less. The petition then names Thomas Lloyd Faubel as owner and asserts no other person or corporation appears of record to have an interest therein, except Anna Faubel, who has or claims an inchoate right of dower; New Jersey Power and Light Company by reason of grant for an electric pole line; the Land Bank Commissioner, address unknown, by reason of a mortgage on said land, and Township of Raritan by reason of taxes and assessments levied thereon. The petition then recites that Buckeye proposes to construct a pipe line "for the transportation of petroleum and petroleum products through same to or for the public in New Jersey and elsewhere" and that the pipe line will be 48.82 miles long, extending from Linden, Union County, to the Pennsylvania-New Jersey state line just south of Frenchtown, Hunterdon County, and into Pennsylvania; that "it is necessary * * * to condemn an easement or right of way fifty feet in width * * *," and describes the right of way by courses and distances, approximately 2,160 feet long and 50 feet wide. Lastly, the petition recites an unsuccessful endeavor to agree with the owner upon a price for the right of way.

The order fixed the time and place for the appointment of commissioners to assess the damages upon the taking and

"ordered that a notice of such hearing be given to the owner of the lands and property described in said petition and to all persons interested therein as set forth in said petition, which said notice shall be served upon such of the persons as reside in this State either personally or by leaving the same at their respective residences with a member of the household above the age of 14 years, before the 1st day of November, 1951.

"It is further ordered that said notice be published in the Hunterdon County Democrat on the 25th day of October, 1951, and on the 1st day of November, 1951, and mailed to each of the several parties interested in the said lands and property who reside outside of the state and whose addresses can be ascertained on or before the 1st day of November, 1951 with postage prepaid thereon."

The motion to dismiss is predicated upon the following grounds: (1) the notice of hearing of the petition was not published as required by statute (*R. S.* 20:1–3); (2) the proof of publication filed fails to show proper publication of notice of hearing as required by *R. S.* 20:1–3; (3) Buckeye Pipe Line Company is not a public utility of this State; (4) the petition on its face fails to reveal a *prima facie* right on the part of Buckeye to take lands by condemnation because: (a) as a foreign corporation, Buckeye has no right to take property by condemnation; (b) petition fails to aver lands sought to be taken are "necessary for public use" as required by *R. S.* 48:10–1; (c) the moving papers are fatally defective for failure to comply with the applicable statute.

The first matter for consideration is to determine the court's function and jurisdiction in the present situation. The Eminent Domain Act, *R. S.* 20:1–1 *et seq.,* vests the appointment of condemnation commissioners in one of the judges of the Superior Court. As such he is an agent of the Legislature and must appoint commissioners upon the ascertainment of certain facts prescribed by the Legislature. *Bergen County Sewer Authority v. Little Ferry,* 5

N. J. 548 (1950). As stated in *Ryan v. Housing Authority of Newark*, 125 N. J. L. 336 (*Sup. Ct.* 1940):

"The function of the special statutory tribunal of first instance is to appoint the commissioners to appraise the lands and assess the damages, if the petition on its face reveal(s) a *prima facie* right to such expropriation and all other jurisdictional prerequisites, and satisfactory proof is filed of the giving of the statutory notice."

█ *R. S.* 48:10-1 is explicit that the petition for appointment of commissioners shall state that the taking by condemnation is of "land and other property necessary for public use." That allegation is lacking and, since it is an essential averment, the petition is defective.

█ The arguments for dismissal predicated upon the pipe line company being a foreign corporation and therefore without standing to condemn property or land and the argument predicated upon the proposition that since the pipe line company is not a public utility, it is without the power of condemnation, are both questions which the legislative agent is without authority to pass upon. *Ryan v. Housing Authority of Newark, supra.* See *Faubel v. Buckeye Pipe Line Co.*, 20 N. J. Super. 116 (*Law Div.* 1952).

The statute relating to notice is *R. S.* 20:1-3, reading:

"The justice or judge of the circuit court to whom the petition is presented shall assign, by order, a time and place for the hearing of the petition before himself, or any other justice of the supreme court, or judge of the circuit court, not less than ten days after the date of the order, and direct notice thereof, not less than six days, to be given the owners, occupants and persons interested. The notice shall be served upon each party residing in this state, either personally or by leaving a copy thereof at his residence, if known. Where the residence is unknown or out of the state, notice shall be given and published as the justice or judge of the circuit court shall direct, by publication for not less than one week, and by mailing to each party whose address can be ascertained. Notice given in the manner prescribed by said justice or judge shall be valid and effectual to bind all parties interested in the land or property.

The petition and order shall be filed in the office of the clerk of the county where the land or other property is situate."

■■ When this matter was first before the court, before reargument, the court held that the phrase "not less than one week" meant seven times and further that "publication in accordance with the statute is a condition precedent to the right of condemnation and the proceedings must be conducted with the formalities prescribed in the statute granting the power. They are of the essence of the grant and the courts cannot disregard them on the conception that they are not essential. * * * Compliance with the statutory requirement is jurisdictional." As general propositions of law, the above quotation is perhaps unassailable. As applied to the statute under scrutiny, they are more than vulnerable.

*R. S.* 20:1–3 deals with two classes of notice, (1) residents, (2) non-residents and those whose residence is unknown. As to residents, be they owners, occupants or persons interested, the meaning is clear. It requires service "either personally or by leaving a copy thereof at his residence, if known." The language "not less than six days" means not less than six days before the date set for the hearing of the petition. As to the second class, the requirement is that "where the residence is unknown or out of the state, notice shall be given and published as the justice or judge of the circuit court shall direct, by publication for not less than one week, and by mailing to each party whose address can be ascertained." The rule that a clear and unambiguous statute requires no judicial interpretation needs no citation of authority for its support. Where, however, the language is ambiguous, there is not only a need for judicial interpretation but a duty on the court to furnish it. Such an ambiguity arises from the fact that the Legislature has used the phrase "not less than six days" in the case of residents and "not less than one week" in the case of non-residents. The ambiguity arises from the double meaning inherent in the word "week," which may mean (1) a period of seven days, or (2) a time seven days before or after a specified day. If the former, then publication would have to be seven times

daily before the specified day; if the latter, publication might be once, seven days before the specified day. To arrive at the intent of the Legislature, one may seek the meaning of a particular word .or phrase by reference to associated words or phrases in the statute. Analogous phrases in a statute lend color and expression to each other, and all parts of the statute should be considered and construed together. In *Stroud v. Consumers Water Co.*, 56 *N. J. L.* 422, 424 (*Sup. Ct.* 1895), the court construed "for at least six days previous" to a specified day to refer to a period of time and not to the number of times of publication. In *Bancroft Drainage District v. Chi., St. P. & M. & O. Ry. Co.*, 167 *N. W.* 731 (*Neb. Sup. Ct.* 1918) the court held that the requirement that "a notice shall be inserted for at least one week" was met by a single publication on September 3 for a meeting to be held on September 11. In *Newman v. Lynchburg Investment Corp.*, 236 *U. S.* 692, 35 *S. Ct.* 477, 59 *L. Ed.* 792 (1915) the court had under consideration a statute which provided: "cause public notice of not less than twenty days to be given of the institution of such proceedings, by advertisement in three daily newspapers, * * * etc." Said Mr. Justice Holmes:

> "The statute means that notice shall be given either not less than twenty days before the time set, or on twenty distinct days before that time. We think it means the former. As to the usage of speech, when we speak of giving a week's or a month's notice we mean a notice that is a week or a month before the event."

 There is no question but that the phrase "not less than six days" refers to a period of time in advance of a specified date. Applying the doctrine of *"noscitur a sociis"* it seems reasonable to assume that "not less than one week" as used in the same paragraph of *R. S.* 20:1-3 means a week, *i. e.*, seven days, in advance of the hearing. The State Highway Department and more recently the Turnpike Authority have consistently construed the statute to require but a single publication not less than seven days before the date for the

appointment of commissioners. Such departmental construction is helpful in interpreting an ambiguous statute. *Stephens v. Civil Service Comm.*, 101 *N. J. L.* 192 (*E. & A.* 1924).

For the reason that the petition does not follow the language of the statute as to necessity for public use, the petition is dismissed. No costs are allowed.