43 N.J. Super. 452 (1957)
128 A.2d 879
IN THE MATTER OF THE INCORPORATION OF THE VILLAGE OF LOCH ARBOUR.
Superior Court of New Jersey, Monmouth County Court.
Argued December 14, 1956.
Decided January 18, 1957.
*453 Mr. William S. Myers argued the cause for the applicant (Messrs. Hannoch, Weinstein, Myers & Stern, attorneys; Mr. Joseph S. Seidel, on the brief).
Mr. Sidney Hertz argued the cause for the objectors (Messrs. Stout & O'Hagan, attorneys).
EVANS, J.C.C.
An application for an election in a certain described part of Ocean Township for the incorporation of the "Village of Loch Arbour" pursuant to R.S. 40:157-1 et seq. was made September 17, 1956, and proof of compliance with the provisions of the order signed that day has been filed showing the publication of the notice of the hearing.
At the hearing on October 19, 1956 a resident taxpayer and the township appeared by attorney in opposition thereto.
Testimony was taken and after the exchange of certain data by counsel the matter was finally submitted to the court on December 14, 1956 with the following three questions to be determined.
1. In proceedings of this nature does this court sit purely as a legislative agent and thereby limited to a determination of compliance with the act?
2. Is the statute constitutional?
3. Assuming the act constitutional, is it limited to the existing villages?
A municipal corporation is a creation of the State and as such its changes must necessarily conform to the pattern established by the Legislature. The Legislature is restricted by the Constitution against passing "private, local or special laws * * *. Regulating the internal affairs of towns and *454 counties; appointing local offices or commissions to regulate municipal affairs." Const. 1844, Art. IV, Sec. VII, par. 11 (phraseology changed in Const. 1947).
The legislative authority for the application is R.S. 40:157-1 et seq., the history of which is briefly summarized as follows:
The general and basic village act was adopted by L. 1891, c. 22, p. 33.
Because of the decision In re Ridgefield Park, 54 N.J.L. 288 (Sup. Ct. 1892), the Legislature amended the Village Act by L. 1892, c. 267, p. 416.
The Legislature in L. 1896, c. 117, p. 171, adopted "An Act relating to the formation of boroughs and villages" which provided that no borough or village shall thereafter be incorporated in this state except by special act of the Legislature.
The Legislature by L. 1917, c. 208, p. 684, in an act entitled "An Act to repeal sundry acts relative to municipal corporations," repealed the foregoing L. 1896, p. 171.
The Compiled Statutes 1709-1910, which were compiled under the authority of the New Jersey Legislature in volume 4, page 5727, under the title "Villages," apparently sets forth the entire general act of 1891, as amended, with this heading "General Act of 1891 for the Formation and Government of Villages, with Supplements."
The Cumulative Supplement to N.J. Compiled Statutes 1911-1924 was published under the direction of L. 1923, c. 56, and volume II, page 3783, under section 229 entitled "Villages," indicates the continued existence of L. 1891, page 33, as amended.
The Revised Statutes of New Jersey, R.S. 40:157-1 to R.S. 40:159-5 substantially re-enacted L. 1891 as amended by L. 1892, with a changed phraseology in many instances and the addition of par. 16.
The Legislature by L. 1953, c. 37, p. 749, amended paragraphs 2 and 17 of the existing act obviously for the purpose of changing the name of the court to which application shall be made in order to comply with the changed judicial system.

I. IN PROCEEDINGS OF THIS NATURE DOES THIS COURT SIT PURELY AS A LEGISLATIVE AGENT AND IS THEREBY LIMITED TO A DETERMINATION OF COMPLIANCE WITH THE ACT?
The statutory provisions which form the basis for these proceedings and are pertinent to this question are as follows:

*455 "40:157-2. Application for election; contents; filing
The proceedings for the formation of such village shall be commenced by an application in writing for an election to be held as hereinafter provided, to the County Court of the county wherein the proposed village is situate.
The application shall set forth the name and boundaries of the proposed village and shall be signed by persons owning at least one-fifth in value of the taxable real estate in the limits of the proposed village as the same appears upon the assessor's duplicate for the last preceding annual tax levy. The application shall be filed with the county clerk and be open to the inspection of all persons interested. As amended L. 1953, c. 37, p. 749, § 295."

"40:157-3. Hearing and notice
Upon the presentation and filing of the petition, the court shall designate a time for the consideration thereof, notice of which shall be in writing under its hand, set up at least ten days previous to said time in five of the most public places within the proposed village limits and published at least twice in a newspaper published therein, and if there be no such newspaper, then in a newspaper published in the county. The notice shall contain the name and boundaries of the proposed village and shall state that on the day so designated the court will hear and consider what may be said thereon by any person interested."

"40:157-4. Hearing; report filed
At the time and place so designated the court shall determine by affidavits or by evidence taken before it whether the proposed village contains the population required by section 40:157-1 of this title, and whether said petition is signed by petitioners owning the requisite amount of real estate. The court may adjourn the hearing from time to time and make such orders as may be necessary to correct or amend any defective proceedings and shall file with the county clerk its determination in writing of the matters submitted to it."
At least several incorporated villages, South Orange (L. 1869, page 645) and Irvington (L. 1874, page 623), existed by virtue of special acts prior to the passage of the general act in 1891, and after the passage of that act a petition was presented to the justice of the Supreme Court holding the Circuit Court in the County of Bergen for the formation of the Village of Ridgefield Park. The justice doubted the constitutionality of an essential part of the act and declined to call an election. Mandamus was sought from the Supreme Court and it was denied for the reasons set forth in In re Ridgefield Park, 54 N.J.L. 288 (1892).
*456 In Broking v. Van Valen, 56 N.J.L. 85 (Sup. 1893), the petition for the formation of the Village of Carlstadt was presented to the Common Pleas judge of Bergen County. The judge in that instance refused the election because part of the territory enjoyed corporate powers and the particular section of the act used did not apply. Interesting dicta acknowledges the effort of the 1892 Legislature to correct the defects of the 1891 act, as demonstrated by In re Ridgefield Park, supra.
Most enlightening on two points is the Supreme Court decision in Long Branch v. Sloane, 49 N.J.L. 356 (1887), reviewing the action of A. Walling, Jr., presiding judge of the Monmouth County Common Pleas Court in signing an order August 11, 1886 directing a special election of the legal voters within the municipality known as the Long Branch Police, Sanitary and Improvement Commission. The act proceeded under differed in that it provided ways for the formation of a borough. The court in setting aside the order said in part:
"* * * This order was a first step in a proceeding which might result in the dismemberment of the municipality, which is the real prosecutor. It was an adjudication by the officer who made it of his right to call the election. When made, the municipality affected had a right to challenge the validity of his adjudication. In this respect the case falls within that class in which a certiorari will lie before final action or judgment." (Emphasis supplied.)
From the above cited cases no clear pattern is disclosed and analogy must be found, if possible, to aid in the interpretation.
In support of their view that the court's function in this instance is sitting as a legislative agent and limited to a determination of the factual compliance with the act, applicants have cited Ryan v. Housing Authority of Newark, 125 N.J.L. 336 (Sup. Ct. 1940), as a parallel. There Justice Heher said:
"The function of the special statutory tribunal of first instance is to appoint the commissioners to appraise the lands and assess the *457 damages, if the petition on its face reveal a prima facie right to such expropriation and all other jurisdictional prerequisites, and satisfactory proof is filed of the giving of the statutory notice. R.S. 20:1-2, 20:1-6. If thereby the rights of the landowner have been invaded, through an excess or abuse of power, he may invoke, by certiorari, the general supervisory jurisdiction of the Supreme Court, exercising in that behalf the powers of the King's Bench to correct the wrongful exercise of authority by the special tribunal. * * *"
Also see Bergen County Sewer Authority v. Little, 5 N.J. 548 (1950); Borough of Little Ferry v. Bergen County Sewer Authority, 9 N.J. 536 (1952); In re New Jersey Turnpike Authority, 19 N.J. Super. 94 (App. Div. 1952); In re Buckeye Pipe Line Co., 20 N.J. Super. 123 (Sp. Stat. Ct. 1952).

"R.S. 20:1-2. Petition for appointment of commissioners; contents; verification
The party exercising the right of taking shall present a petition to one of the justices of the Supreme Court or to a judge of the Circuit Court of the county wherein the land or other property is situate for the appointment of three commissioners to fix the compensation to be paid.
The petition shall contain a particular description of the land and property required and shall set forth the names of the owner and occupant, if any there be, and of the persons appearing of record to have any interest in the property, and the residence of said owner, occupant and persons if the same can be ascertained. The petition shall be verified by the oath of the engineer or agent of the petitioner."

"R.S. 20:1-6. Appointment of commissioners; notice of hearing
On the filing in the office of the county clerk of evidence satisfactory to the justice or judge of the Circuit Court before whom the hearing upon the petition is held that notice has been served or published as required by this chapter, said justice or judge of the Circuit Court shall, upon the day fixed for said hearing, appoint under his hand three disinterested freeholders, residents of the county where the land or property to be taken is situate, commissioners to examine and appraise the land or property and to assess the damages on at least six days' notice to be given to the persons interested in the property in such manner as the justice or judge shall direct."
A comparison of the Condemnation Act and the one in question in this cause indicates rather conclusively that since the Supreme Court has characterized the role of the Supreme *458 Court justice or Circuit Court judge in condemnation proceedings in the first instance as that of a special statutory tribunal, the function of the county judge in these proceedings can be no greater. In view of the designation of the Superior Court, Law Division, as the forum for the trial of all actions in lieu of prerogative writs, R.R. 4:88-2, such construction would more fully fit into the pattern of our judicial system.

II. IS THE STATUTE CONSTITUTIONAL?
The proceedings herein are not based upon any common law right of action but purely statutory, and the duty of the court would lie within the confines thereof. The objectors do not question the jurisdiction of the court but ask this court to determine the act unconstitutional.
In 1893 the Supreme Court said in Broking v. Van Valen, supra:
"By the amendatory act of 1892, to which reference has been made, section 5 of the act of 1891 was repealed, and the attempt made to eliminate the unconstitutional provisions of the act of 1891; and in the decision of the case here now before the court the act of 1891 as amended by the act of 1892 has been treated as furnishing a constitutional scheme for the incorporation of villages."
The second point of interest heretofore mentioned in Long Branch v. Sloane, supra, was that statement in the decision as follows:
"It is obvious, however, that the act of 1878 ought not to be brought into question, unless it is necessary to the decision of the case before us. It seems to have stood unchallenged for nearly nine years. Under its provisions borough governments may have been formed. A decision against its validity might operate most disasterously upon such boroughs without their having an opportunity to be heard." (Emphasis supplied)
No other decision has been disclosed by counsel which indicates vividly the unconstitutionality of the act in question and it would seem that time and position of statutory acceptance has clothed it with such stature that this court should leave that question to another tribunal. R.R. 4:88-2.

*459 III. ASSUMING THE ACT TO BE CONSTITUTIONAL, IS IT LIMITED TO EXISTING VILLAGES?
Objectors urge this limitation because of R.S. 40:157-16 which was included in the Revision of 1937, but fails to explain the several changes in the revision. If no other elections were to be held under this act what explanation can be given for the change in paragraph 15 providing:
"The election shall be by ballot, and shall be conducted as nearly as may be in accordance with the general laws relating to elections"?
If objectors' position is tenable, why did the Legislature of 1953 believe it necessary to amend paragraph to provide for an application instead of a petition and correct the court's name to conform to the new system?
Both counsel agree that the adoption by the Legislature of the Revised Statutes in 1937 was an independent reenactment of the statute superseding all preexisting general law. Devlin v. Cooper, 124 N.J.L. 155 (Sup. Ct. 1940), affirmed 125 N.J.L. 414 (E. & A. 1940); State v. Czarnicki, 124 N.J.L. 43 (Sup. Ct. 1940). Subsequent to the Revision of 1937 the Legislature in 1950 adopted the Faulkner Act, N.J.S.A. 40:69A-1, and amended the same in 1953, the year it amended the General Village Act. Since a legislative body is presumed to be familiar with the statute law of the State, Yanow v. Seven Oaks Park, Inc., 11 N.J. 341 (1953), and a presumption exists against useless legislation, Tucker v. Frank J. Beltramo, Inc., 117 N.J.L. 72 (Sup. Ct. 1936), the intent suggested by the objector does not manifest itself.
Certainly neither the unconstitutionality nor the limitation is so apparent that this court, in view of the meeting of the legislative requirements, should do other than to adopt the position of legislative agent. The wisdom of partial separation may be disclosed by future events, but since the machinery is available for the citizens' determination, that opportunity should be afforded those who have complied with the act. A determination of compliance with the statute and an order for an election may be presented forthwith for signature.